HOUSER *v.* WILLIAMS *et al.*, for use.

When the sheriff accepts of a claimant a forthcoming bond and releases the property under execution, he has no authority, before a breach of the bond, again to seize the property and to charge the plaintiff in execution with the expense of keeping it.

March 10, 1890.

| 84 | 601 |
|----|-----|
| 85 | 552 |
| 84 | 601 |
| 90 | 21 |
| 84 | 601 |
| 103 | 677 |

Illegality. Claim. Bonds. Sheriffs. Before Judge
SMITH. Taylor superior court. February term, 1889.

An execution for $486.40 against Houser, in favor of
J. J. and Annie E. Williams for the use of officers of
court, having been levied, Houser interposed his affi-
davit of illegality on the following grounds :

(1) Of the amount of the execution, $372.85 was
charged for feeding certain cattle and a horse. The
sheriff had levied a small mortgage *fi. fa.* against J. J.
Williams upon said property, and Annie Williams in-
terposed her claim and gave a forthcoming bond for
the same ; whereupon the sheriff turned the property
into her possession until the day of sale in case it was
found subject. This claim was dismissed, and the
claimant filed another claim, which the court sustained
upon the jury finding the property not subject. Said
property never was offered for sale, and was legally in
possession and kept by the claimant, for the forthcom-
ing bond was accepted by the sheriff. The charge for
keeping said stock is illegal, and deponent does not
owe it.

(2) The sheriff did not proceed to advertise and sell
the property for six months after the first claim was dis-
missed and the *fi. fa.* ordered to proceed, but delayed
to do so until after the succeeding term of the court ;
and if he held the stock he did so illegally.

(3) After allowing the claimant to hold the property
for six months after filing her claim under her forth-
coming bond, the sheriff took possession of it without
the consent of herself or her security. He put the cat-
tle on his own swamp and there kept them without any
cost to himself, and the horse was no actual cost to
him. The mortgage was for only $150.00 ; the property
was mortgaged to deponent as he thought in good faith,
and the mortgage was foreclosed and the property
claimed by Mrs. Williams ; the sheriff knew of the

amount of the mortgage, but did not attempt to relieve either party from costs by obtaining an order for sale; this being the privilege of himself and claimant, and deponent being unable to do so as the claim was pending. He therefore prays an equitable relief if the other grounds are held insufficient.

For the other facts see the decision.

M. G. Bayne, for plaintiff in error.

W. S. Wallace, contra.

Simmons, Justice.

It appears from the record in this case that in 1884, Houser foreclosed a mortgage against J. J. Williams on certain mules, horses and cattle. A mortgage fi. fa. was issued and levied by Pope, the sheriff, upon the cattle and two horses. To this levy Annie E. Williams, the wife of J. J. Williams, interposed her claim to the property, and gave a forthcoming bond with John and M. E. Taylor as sureties upon the same. At the trial term of the claim, it was withdrawn; but the claimant afterwards renewed her claim, and on the trial of this second claim, the property was found not subject. On this verdict a judgment was entered up against Houser, the plaintiff in fi. fa., for $486.40, costs and interest thereon from the 2d of March, 1886. The itemized bill of costs is as follows: "Filing and docketing claim, $3.00; issuing subpœnas, 30 cents; two advertisements, $6.00; levy, $2.00; taking bond, $1.00; feed of thirteen head of cattle for 193 days, at 15 cents per day each, $376.35; feed of one horse for 193 days, 50 cents per day, $96.50; attendance on jury, $1.25,"—making $486.40. This fi. fa. was levied on the property of Houser, and he interposed an affidavit of illegality on various grounds, which will be seen by reference to the official report. On the trial of the issue of illegality, the jury found against the same and in favor of the fi. fa. Houser

made a motion for a new trial, upon the several grounds set out therein, which was overruled by the court, and he excepted.

The main grounds relied on here for a reversal of the judgment of the court below in not granting a new trial, are the 7th, 8th, 9th, 10th and 11th. The substance of these grounds is, that the court charged that the forthcoming bond given by Mrs. Williams required her to have the property forthcoming on the day of sale, and if she appeared in court and dismissed her claim, that disposed of that claim case and everything connected with it; that there was then no such case in court, and that the claim bond ceased to be in force, and also the forthcoming bond ceased to be in force at that time, upon the cessation of that case; that the securities upon the forthcoming bond were not bound except so far as that particular case was concerned, and therefore the bond ceased to be such a forthcoming bond as the law requires, except as to that claim; that it was the duty of the sheriff, upon the dismissal of the claim, to take possession of the property and have it forthcoming, or at least to advertise and have it present on the day of sale; and if he did take possession of this property after the first claim was dismissed, then, having the property in his possession, he would have the right to control it as sheriff, and it could only be taken out of his possession legally, and he was entitled to charge the legal fees for keeping the property after taking possession of it from the claimant.

The main question in this case is as to the extent and effect of a forthcoming bond given by a claimant and accepted by the sheriff. Under the law of this State, when a sheriff levies an execution upon personal property, and it is claimed by a third person, that person has a right to give to the sheriff a forthcoming bond. That bond is for the delivery of the property at the

time and place of sale, provided such property so levied upon should be found subject to the execution.  When that bond is given, and is accepted by the sheriff, it releases the property from his seizure, and it is his duty to turn it over into the possession of the claimant.  He has nothing more to do with the property; his only reliance and security is the bond; the bond is made payable to him; it is given as a protection to him; and if the property is found subject, and the claimant or his securities do not produce it at the time and place of sale, he has a right to sue upon the bond.  When a claimant gives a bond, and it is accepted by the sheriff, such claimant has a right to take the property into his possession and keep it during the pendency of the litigation.  Nor has the sheriff any right, on his own motion or upon the order of the plaintiff in execution, to again seize and hold the property.  If the claim is withdrawn by the claimant, the sheriff still has no right on his own motion to seize the property.  All he can do is to re-advertise the property, and if the claimant does not produce the property at the time and place of the sale, the sheriff must sue upon the bond.  The forthcoming bond does not cease or lose its effect by a withdrawal of the claim; nor is it necessary for the claimant to tender another forthcoming bond when he renews his claim.  The bond given by him, whether the property is found subject on the first or second claim, obligates him to produce the property at the time and place of the sheriff's sale.  If the law were otherwise, it would give rise to great hardships upon the plaintiffs in *fi. fa.*, and fraud on the part of claimants.  Property might be levied on by the sheriff, a forthcoming bond given by the claimant, and the property turned over to him by the sheriff; and the claimant might then run it off, or sell it and put the proceeds in his pocket, and when the term of court arrived he could withdraw his claim, as he is

allowed to do under our law, and under the instructions given by the learned judge in the court below, the forthcoming bond would cease to operate, and the plaintiff in *fi. fa.* would be remediless. We think the sounder doctrine and better practice would be to hold, as we do, that upon the withdrawal or dismissal of a claim, the forthcoming bond does not cease to have effect as charged by the court below, but continues in force throughout the whole litigation, whether a second claim is filed or not. It follows from these views that the sheriff had no right to take possession of the property in the hands of the claimant after he had accepted a forthcoming bond, either upon his own motion or upon the suggestion of the plaintiff's counsel. If he had no right to take possession of the property, it follows that he had no right to charge the expense of keeping the same to the plaintiff in *fi. fa.* It was argued here that for us to hold that a sheriff could not retake possession of property when he ascertained that the bond given was insolvent, would expose him to great loss. Perhaps it may work a hardship upon the sheriffs, but we cannot undertake to decide the law in order to avoid hardships to persons. If we had the power to make the law, we might authorize the sheriff to protect himself by retaking the property when he ascertained that he had been deceived as to the solvency of the bond, or in the event the surety became insolvent after signing the bond. This, however, is a matter for the legislative branch of the government, and not for this court. His only safety now is in taking a good bond, being certain that the sureties are solvent.      *Judgment reversed.*